# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| KATHLEEN ROHDE,<br><br>    Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | No. C08-4028-PAZ<br><br>**MEMORANDUM OPINION AND ORDER** |

_____

This matter is before the court on judicial review of the defendant's final decision denying the plaintiff's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. The plaintiff Kathleen Rohde filed her application on July 1, 2003, alleging a disability onset date of August 27, 1996. Rohde claims she is disabled due to chronic pain and weakness in her low back, legs, and feet that prevent her from sitting, standing, or walking for long periods of time; cause her continuous pain; prevent her from sleeping through the night; and require her to lie down and nap every day. She also complains of urinary problems and depression.

Rohde's application was denied initially and on reconsideration. She had a hearing before an Administrative Law Judge ("ALJ") on January 11, 2006. At the hearing, Rohde amended her alleged disability onset date to November 17, 2000. On June 21, 2006, the ALJ denied Rohde's application for benefits, finding Rohde was able to return to her past relevant work as a security guard, gate guard, and jailer. The Appeals Council denied Rohde's request for review on February 15, 2008, making the ALJ's decision the final decision of the Commissioner.

Rohde filed a timely Complaint in this court, seeking judicial review of the ALJ's ruling. On June 23, 2008, with the parties' consent, Judge Donald E. O'Brien transferred

the case to the undersigned for final disposition and entry of judgment. The parties have briefed the issues, and the matter is now fully submitted and ready for review.

The issue before the court is whether the ALJ applied the correct legal standards, and whether his factual findings are supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007) (citations omitted). In this deferential review, the court considers the record in its entirety to determine whether a reasonable mind would find the evidence adequate to support the Commissioner's conclusion. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citations omitted); *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006). Here, Rohde argues the ALJ erred in weighing the medical evidence incorrectly, finding some of her impairments not to be severe, finding her subjective complaints not to be fully credible, and concluding she could return to her past relevant work.

Rohde's date last insured for purposes of her claim was December 31, 2000. She must establish that she was disabled prior to that date. Thus, Rohde must establish that she was disabled during the brief period between her alleged disability onset date of November 17, 2000, and her date last insured of December 31, 2000.

Rohde was born in 1957. She is divorced, and at the time of the hearing in 2006, she lived in a house with her sixteen-year-old daughter. She has little employment history. In 1991, she worked for six months as a jailer. In 1994, she underwent a discectomy at L4-5 and L5-S1. Beginning in late 1995, she went to work as a security guard. While working, Rohde fell off a chair, injuring her back. She had additional back surgeries in November 1997, and September 1998, with placement of hardware at L4, L5, and S1. She returned to work after each of her surgeries, but according to Rohde, she was placed on light duty and coworkers assumed many of her job responsibilities. She was terminated from her job as a security guard in August 1999, because she could not return to full-time work performing all of her job duties. She has not worked since that time.

Ever since her 1997 back surgery, Rohde has complained continuously of pain in her low back, legs, and ankles. She has attempted numerous treatment modalities including injections, use of a TENS unit, physical therapy, and numerous medications, but none of these has relieved her constant pain completely. However, objective medical examinations and testing prior to Rohde's date last insured failed to demonstrate any significant physical deficits, and doctors were unable to find an objective cause for her ongoing pain. In April 1999, Rohde's treating neurologist and surgeon, Quentin J. Durward, M.D., noted the etiology of Rohde's pain was uncertain. He stated, "Some of it presumably is fibromyalgia as she is very tender subcutaneously over the lower back. Some of it may be related to old nerve compression, possibly nerve damage, although with her retained reflexes, the amount of nerve damage must be very minimal." A.R. 265.

On the issue of Rohde's functional capacity, Dr. Durward assessed Rohde with a 21% impairment to the body as a whole, and he offered the following opinion regarding her ability to work:

> As far as the question of permanent restrictions go[es], I think that is really determined in part whether we are assessing restrictions on my estimation of what her back can tolerate which is 30 lbs. frequent and 50 lbs. occasional or based upon what she says her pain is. If that is the case, then the limit should be 10 lbs. I would try to avoid bending at the waist. She can stoop[] and she can stand. She could sit to stand on a frequent basis as needed to relieve discomfort. Also with standing, if she could occasional[ly] sit while standing perhaps 4 times per hour, it would give her some relief from the standing discomfort she has. By my estimation, she would qualify for a medium occupation objectively, although as stated before, the pain she has at this point in time appears that she is not able to lift more than 10 lbs. She could work up to 8 hours a day. Mrs. Rhode [sic], however, tells me she has so much pain at the end of 3 hours that she cannot work. I have no objective way to refute that. Mrs. Rhode [sic] is currently working as a security officer at Gateway. I see no reason why to discontinue that job.

A.R. 26. In August 1999, Dr. Durward found it "important to stress again that her back is strong and that it can certainly physically take working within the restrictions that we have placed on her." A.R. 264.

In January 2000, Rohde saw pain management specialist Bruce W. Keppen, M.D. for evaluation. He noted Rohde was "very tender over the paraspinous muscles over her entire back with the right slightly worse than the left, over the area of the sacroiliac joint." A.R. 240. Otherwise, her examination was largely unremarkable. Dr. Keppen suggested Rohde's low back pain "might represent a post laminectomy syndrome, though this is more vague since she describes no time of improvement after surgery." A.R. 241. He offered her epidural steroid injections which Rohde declined at that time. He prescribed Naprosyn and an increased dosage of Nortriptyline. Rohde also tried a TENS unit. At the time of her evaluation for the TENS unit on January 26, 2000, she rated her pain level at 5 out of 10. A.R. 244. Rohde underwent epidural steroid injections for "severe pain down her right leg . . . and in the low back" on February 9, 2000.

On July 25, 2000, Rohde underwent a consultative physical examination by John H. Roberts, M.D., at the request of the state agency. Dr. Roberts noted Rohde complained of back tenderness at the L4-5, L3-4, L5, and S1 areas on the right and left, greater on the right. Rohde's ranges of motion of her upper and lower extremities were normal, and straight leg raising was negative. The doctor noted, "The patient has very little in the way of objective evidence. Pinprick testing suggesting roughly equal sensory detection in the upper and lowers and no dermatomal pattern of numbness. Her symptoms are usually all subjective. Her deep tendon reflexes are equal symmetrical and normal. She has good [range of motion] in her back." A.R. 248-49. Dr. Roberts opined that Rohde had postoperative pain syndrome. He was concerned that Rohde's "new bladder symptomatology may represent worsening of the neurologic deficit that she has." A.R.

4

249. He recommended "a urological evaluation to assess her recent bladder function changes and a rheumatologic examination to rule out fibromyalgia." *Id*.

As of October 26, 2000, Rohde completed a disability questionnaire in which she described the following complaints. She had pain in her low back, worsening throughout the day. Going up and down stairs caused pain in her legs and low back. Twisting movements caused pain in her back, and she had difficulty wiping herself after a bowel movement because of the twisting involved. She experienced constant pain throughout the day and night, and she was awakened in the night by the pain. She walked two miles each day on a treadmill, did strengthening exercises, and did some swimming in summer months, but she did not experience any pain relief from these activities. She took Nortriptyline to help her sleep, Ultram for pain, and Oxybutynin for her overactive bladder.

Rohde indicated she was still able to perform self-care and housework activities, but these tasks took her much longer than they used to. She became fatigued very easily, and experienced pain in her back within a short time after completing tasks. She had to sit down to dress herself and had difficulty tying her shoes. Showering, brushing her teeth, and shaving her legs caused back pain and fatigue. Sitting for more than a couple of hours caused muscle spasms and pain in her back. Rohde stated she used to enjoy hiking and picnics with her children, but she had ceased these activities due to pain and fatigue. She also indicated her activities were restricted because of her need to urinate frequently.

On a typical day, Rohde indicated she exercised on a treadmill for forty-five minutes, vacuumed for half an hour, made dinner and did dishes for about an hour, and drove her daughter to and from school. She generally would lie down for thirty minutes to an hour in the morning after her exercises, and again in the afternoon. She would grocery shop when one of her daughters went with her to push the cart and carry the heavier groceries into the house. She could do laundry but someone else would carry the clothes up and down the stairs for her.

With the paucity of objective evidence for Rohde's ongoing pain, the disability determination in this case turns on the credibility of her subjective complaints. The ALJ found Rohde "was not credible about the severity of her symptoms and limitations on and before December 31, 2000." A.R. 26. He noted the lack of objective medical evidence to support Rohde's complaints, and he found Rohde's level of activities not to be "indicative of limitations as severe as the claimant alleged." *Id.* He further noted, "In addition, although examiners noted the claimant had some signs of back impairment such as limited range of motion and tenderness, they did not observe signs indicative of a more severe impairment such as persistent muscle spasm, muscle weakness, and muscle atrophy." *Id.*

The ALJ found Rohde had a residual functional capacity that included lifting up to twenty pounds occasionally and ten pounds frequently, with the ability to sit, stand, and walk for six hours, and occasionally perform other postural activities. A vocational expert testified that a person with these limitations could perform any of Rohde's past jobs, not as Rohde described them but as those jobs are described in the *Dictionary of Occupational Titles*. Finding no discrepancies between the DOT classifications of those jobs and the vocational expert's description of those jobs, the ALJ found Rohde could return to her past relevant work and she therefore was not disabled.

Although an ALJ may not discount a claimant's subjective complaints solely on the basis that the record lacks objective evidence to support them, a claimant's subjective complaints may be discredited when they are inconsistent with the record as a whole. *See Hinchey v. Shalala*, 29 F.3d 428, 432 (8th Cir. 1994). When an ALJ's credibility determination is "supported by good reasons and substantial evidence," the court must defer to the ALJ's determination. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Further, the court may not reweigh the evidence or make a *de novo* review of the factual record, but must defer to the Commissioner's decision if it is supported by substantial evidence, even if the court would have weighed the evidence differently.

6

*Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)); *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)); *Culbertson v. Shalala*, 30 F.3d 934, 949 (8th Cir. 1994) (citing *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)).

Here, Rohde's subjective complaints for the period in question are inconsistent with the record as a whole. Although it appears Rohde's condition may have worsened to the point of disability in more recent years, for the period in question the record lacks substantial evidence to overturn the Commissioner's decision.

Rohde further argues the ALJ should have reopened a previous application for benefits she filed on May 12, 2000. The previous application also was denied initially and on reconsideration. Rohde filed an untimely request for hearing that was dismissed by an ALJ, and the Appeals Council denied Rohde's request for review. In the present case, the ALJ found Rohde's prior claim was not subject to reopening. Rohde has not presented a constitutional claim that would authorize judicial review of that decision. *See Boock v. Shalala*, 48 F.3d 348, 451 (8th Cir. 1995); *Brown v. Sullivan*, 932 F.2d 1243, 1245-46 (8th Cir. 1991) (citing *Califano v. Sanders*, 430 U.S. 99, 107-09, 97 S. Ct. 980, 985-86, 51 L. Ed. 2d 192 (1977)).

For the reasons discussed abve, the Commissioner's decision is **affirmed**, and judgment will be entered for the Commissioner and against Rohde.

**IT IS SO ORDERED.**

**DATED** this 12th day of March, 2009.

PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT